STATE OF MAINE                          SUPERIOR COURT
KENNEBEC, ss                            CIVIL ACTION
                                        DOCKET NO. AP-10-64
                                        REM-KEN- 11/9/2011


RYAN HERRINGTON, M.D.,
        Petitioner


v.                                      ORDER ON RULE 80C APPEAL


MAINE BOARD OF
LICENSURE IN MEDICINE
        Respondent

MICHELE LUNDER CLERK OF COURT    2011 NOV -9    A 9: 25    RECEIVED AND FILED KENNEBEC SUPERIOR COURT

Before the Court is Petitioner's appeal pursuant to M.R. Civ. P. 80C from a

November 9, 2010 "Letter of Guidance" issued to him by Respondent, Maine Board of

Licensure in Medicine.


## FACTS

Petitioner Dr. Ryan Herrington (Dr. Herrington) is the former medical director for

the Maine Department of Corrections. Respondent, Maine Board of Licensure in

Medicine (the Board), is a professional and occupational licensing board created pursuant

to 5 M.R.S.A. § 12004-A. Title 32 M.R.S.A., chapter 48 defines the composition,

powers, and authority of the Board.

On October 15, 2009, the Board received a Complaint filed by an inmate J.M.

(Herinafter "J.M."), a prisoner within the Department of Corrections system, against Dr.

1

Herrington. The Complaint concerned urological care J.M. had received from certain unknown medical staff under Dr. Herrington's supervision. J.M. suffered from urinary retention and had been permitted to see an outside urologist who recommended that he self-catheterize three times per day and that he return for a follow-up in one month. After that, J.M. claimed that medical staff only allowed him to self-catheterize 1-2 times per day, and that he was not permitted to return to the urologist for over two months.

On November 5, 2009, the Board sent Dr. Herrington a copy of the Complaint along with a letter explaining that it was required to investigate the Complaint further. The letter informed Dr. Herrington that he had 30 days to respond to the allegations contained in the Complaint. The letter did not inform Dr. Herrington of any possible legal or ethical violations. Dr. Herrington's lawyer asked the Board to notify him if there were any specific ethical rules or standards of practice that were implicated by the investigation, but the Board did not respond to his request.

As requested, on December 3, 2009, Dr. Herrington provided written answers to the Complaint. He explained that J.M.'s follow-up with the urologist had been delayed because he had revoked consent for the release of information. He further explained that medical staff had reduced the frequency of J.M.'s self-catheterization as part of a weaning process, and that three-times-per-day self-catheterization had been resumed after ten days. Nonetheless, by letter of January 19, 2010, the Board informed Dr. Herrington that it had decided to investigate the Complaint further and instructed him to answer the following two questions in writing: "(1) Why was the opinion of the consulting urologist overruled? (2) Why was there no other urodynamic testing performed on this patient until after he complained?" Dr. Herrington answered these questions by letter of January

2

29, 2010. The Board did not ask Dr. Herrington to address or explain his supervisory role over the medical staff who had made the decisions in question. Thus, he did not comment on it.

By letter of March 11, 2010, the Board informed Dr. Herrington that it had met and decided to hold an "Informal Conference" to further discuss the Complaint. It indicated that the Informal Conference "has fact-finding as its purpose," and "is an opportunity for open exchange of information." On March 17, 2010, Dr. Herrington's lawyer again wrote to the Board to renew his request that it advise him in advance of whether the "allegations of the complaint in this case implicate any specific ethical rule or standard of practice." On September 7, 2010, the Board sent Dr. Herrington notice of the time and date of the Informal Conference and identified two specific issues for discussion: "(1) Treatment related to the patient's urology issues; and (2) Delay in obtaining testing that was recommended by a urologist." On October 12, 2010, Dr. Herrington appeared at the Informal Conference. There, the Board voted to dismiss the Complaint against Dr. Herrington and issue him a Letter of Guidance. This decision to issue a Letter of Guidance was based on the Board's finding, revealed in its minutes, that Dr. Herrington "did not . . . adequately supervise the institution's system and the patient's need for follow up." In the Letter of Guidance, dated November 9, 2010, the Board stated that it "does not constitute an adverse disciplinary action and is not reportable to any data bank." It stated further:

> In this case, a patient complains the recommendations of a consultant for his urologic problem were not followed. He also states he complained about his difficulties multiple times but his complaints were ignored. You replied that the recommendations were followed with the exception of a ten day period and the patient did have appropriate follow-up with the

specialist. After review, the Board invited you to an Informal Conference to further discuss the patient's care. At the conference, you indicated you were not directly involved with the patient's care; however, you were the Medical Director of the clinic at the time.

Even though the Board concluded that your behavior did not rise to a level of misconduct sufficient to warrant disciplinary action, the Board wishes to convey serious concerns about your actions and expects that you will:

> recognize even though you were not directly involved with the patient's care, as Medical Director you have a responsibility to supervise the institution's medical system and the patient's need for follow-up care.

This letter of guidance, together with the complaint, response and investigative materials, will be placed in your file and held for ten (10) years. These materials may be accessed and considered by the Board in any subsequent action commenced against you within this 10-year time period . . . [T]he letter of guidance itself is not confidential.

On December 16, 2010, Dr. Herrington filed the present 80C appeal in this Court.


## ANALYSIS

I.  *Dr. Herrington does have standing to appeal the Letter of Guidance to the Superior Court through M.R. Civ. P. 80C.*

A threshold issue is whether Dr. Herrington has standing to appeal the Letter of Guidance to the Superior Court. Standing is the "irreducible constitutional minimum" necessary to make a justiciable "case or controversy" under Article III of the Constitution. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).[1] The right to

---

[1] This consists of three elements. There must be: (1) An "injury in fact," meaning "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical," (2) "a causal connection between the injury and the conduct complained of," and (3) a likelihood that a favorable decision will redress the injury. *Lujan*, 504 U.S. at 560-561 (citations and quotations omitted).

appeal an administrative decision is governed by the Administrative Procedure Act. *Nelson v. Bayroot, LLC*, 2008 ME 91, ¶ 9, 953 A.2d 378. Under the APA, anyone who is "aggrieved by final agency action" is entitled to Superior Court review. 5 M.R.S.A. § 11001(1). "A person is aggrieved within the meaning of the APA if that person has suffered particularized injury – that is, if the agency action operated prejudicially and directly upon the party's property, pecuniary or personal rights." *Nelson*, 2008 ME 91, ¶ 10, 953 A.2d 378 (citations omitted).

The claimed injury must be "distinct from any experienced by the public at large and must be more than an abstract injury." *Id.* (citation omitted). The Court will "examine the issue of standing in context to determine whether the asserted effect on the party's rights genuinely flows from the challenged agency action." *Id.*

Both parties rely heavily on *Daly v. Bd. of Licensure in Med.*, 2002 WL 1974030 (Me. Super. July 28, 2002), with facts very similar to those here. In that case, the Maine Board of Licensure in Medicine informed a doctor that there had been a complaint filed against him and instructed him to respond in writing, which he did. *Id.* at *1. There was no informal conference. The Board then dismissed the complaint, but issued the doctor a letter of guidance. *Id.* The letter found "without stating directly . . . that he had engaged in unprofessional conduct, criticized his actions and told him to improve his behavior." *Id.*

Note that the issue before the Superior Court was not whether the doctor had standing; the doctor was before the Superior Court without any discussion on the topic. Rather, the issue was whether the requirements of procedural due process were satisfied when the Board had not given the doctor notice of the professional standards he was

5

alleged to have breached. *Id.* at **1-2. The Court held that the doctor was entitled to procedural safeguards and the notice had been inadequate. *Id.* at *2. In getting there, the Court first implicitly found a protectable right in that the letter of guidance "may not have been called disciplinary action or characterized as a sanction but it is." *Id.* at *1. "While the letter of guidance does not suspend or revoke a license it does contain adverse findings, it is public and could be used against [the doctor] in the future." *Id.* at *2.

In *Bd. of Overseers of the Bar v. Ingeneri*, 440 A.2d 1039 (Me. 1982), the issue specifically was one of standing when some action short of discipline is taken on a license to practice law. In that case, a lawyer was found by a single justice of the Maine Supreme Judicial Court to have committed multiple violations of the Bar Rules, and he was suspended from practicing law for three months. *Id.* at 1040. On appeal, he did not challenge the sanction itself, but solely the justice's factual finding that he had misrepresented facts to his client. *Id.* Bar Counsel maintained that the lawyer lacked standing because he was not "aggrieved" by a decree prejudicially and directly affecting a property, pecuniary, or personal right. *Id.* While the factual finding alone was not itself disciplinary, the Law Court held that the lawyer was "aggrieved" because the finding of misrepresentation "operates as a public censure that could cause serious harm to defendant's professional reputation and, ultimately, to his livelihood." *Id.*

In this case, Dr. Herrington takes *Daly* to mean that a doctor in his position is "aggrieved" by a Letter of Guidance because it operates as a sanction. (Br. of Pet. 6-7.) Similarly, he compares himself to the "attorney whose reputation was impugned" in *Ingeneri*. (Br. of Pet. 7.) Although the Letter of Guidance purports to be something other than discipline, as was the factual finding in *Ingeneri*, "it is explicitly critical of his

6

professional conduct," it conveys serious concerns, and strongly implies that his professional conduct was deficient. (Br. of Pet. 7-8.)

Conversely, the Board urges the Court to critically distinguish this case from *Daly* and *Ingeneri* because, based on its reading, those decisions rested on an explicit finding of misconduct and breach of professional standards. (Br. of Resp. 14.) Here, it maintains, there was no such direct conclusion within the Letter of Guidance. *Id.* However, we cannot know from the *Daly* opinion how direct the letter was in that case as compared to the one here. The language is not quoted in the order. The Court wrote that, "*without stating directly*," the letter found the doctor to have engaged in misconduct and breached professional standards. *Daly*, at *1 (emphasis added). Arguably, the Letter of Guidance here did the same, so we cannot automatically distinguish *Daly* on those grounds. Furthermore, even where standing rested on a factual finding of misconduct, as in *Ingeneri*, there is nothing to foreclose the court from considering other factors in the standing analysis.

In any event, a finding of wrongdoing can be inferred from the Letter of Guidance. The Letter of Guidance did not directly state that Dr. Herrington had committed wrongdoing or breached a specific professional or ethical rule, but its admonition strongly implies that he did. By expressing its "serious concerns" about Dr. Herrington's actions and reminding him of his "responsibility to supervise" the medical staff, a reasonably perceptive reader would likely deduce that the Board considered him to have failed in his supervisory role. Furthermore, the minutes from the Board meeting

following Dr. Herrington's Informal Conference explicitly state as such.[2] Any ambiguity surrounding the Board's explanation should not bar an appeal when its inference of wrongdoing is apparent. If anything, the Board's vagueness simply raises due process concerns.

Whether or not we characterize the Letter of Guidance as containing a factual finding of misconduct, it easily operates as a "public censure that could cause serious harm to [Dr. Herrington's] professional reputation and, ultimately, to his livelihood." *Ingeneri*, 440 A.2d at 1040. Whereas the Board urges that any harm to Dr. Herrington is abstract and speculative, (Br. of Resp. 15), cases finding standing do not seem to require any concrete adverse event, but seem implicitly to recognize that damage to an otherwise clean professional record is sufficient.

As a practical matter, moreover, it would be unrealistic to require a licensee to instantaneously prove concrete harm when he has not had time to feel the effects. Although the Letter of Guidance was not assigned the label "discipline," it is not hard to imagine practical adverse effects due to the facts that the letter will remain in Dr. Herrington's professional file for ten years, it is not confidential, and the Board may consider it during any subsequent disciplinary action.

II.     *The Court is not properly positioned to review the Letter of Guidance because the record below was not adequately developed.*

Under 5 M.R.S.A. § 11007(4)(B), the Superior Court has the ability to "[r]emand the case for further proceedings, findings of fact or conclusions of law or direct the

---

[2] The minutes state that Dr. Herrington "did not . . . adequately supervise the institution's system and the patient's need for follow up."

agency to hold such proceedings or take such action as the court deems necessary."
Having determined that the Letter of Guidance essentially functions as an appealable
sanction, the Court finds that the Board record in support of the Letter is inadequate to
affirm, reverse, or modify the decision as provided for in 5 M.R.S.A. § 11007(4)(A), (C).

As noted above, the Letter of Guidance suggests that Dr. Herrington failed in his
responsibility to supervise jail medical staff insofar as it related to J.M.'s urological care.
The Court cannot evaluate the truth of this allegation because there is basically no
evidence in the record concerning Dr. Herrington's supervisory responsibilities. First, the
Complaint, and the Board's correspondence and investigation leading up to the Informal
Conference contain no concern or inquiry into Dr. Herrington's role as a supervisor.
Rather, the focus was on the justification for the decrease in frequency of J.M.'s self-
catheterization. Second, the record of the Informal Conference itself is very limited and
reveals nothing about Dr. Herrington's role as supervisor. There is no transcript, and the
only evidence of what happened is the minutes of the ensuing Board meeting. The
minutes take up only 1/3 of a typewritten page, and simply state that Dr. Herrington
failed to "adequately supervise the institution's system and the patient's need for follow-
up." The minutes provide no basis for this conclusion. In short, there is nothing in the
record before the Letter of Guidance that reflects concern about, or inquires into, Dr.
Herrington's supervisory role.

The Court recognizes that the Board did not intend the Letter of Guidance to be
disciplinary and, as such, did not adequately develop or preserve the record for appeal.
As such, the Court refrains from reversing the Board's decision due to lack of substantial
evidence or constitutional due process violations, as Dr. Herrington urges. Instead, the

Court remands so that the Board may develop its findings if it chooses to pursue further proceedings against Dr. Herrington.

The entry will be:

The Court REMANDS the case to the Board.

The Clerk is directed to incorporate this Order by reference in accordance with MRCivP 79(a).

10/28/11
DATE

SUPERIOR COURT JUSTICE

Date Filed __12/16/10__ __Kennebec__ Docket No. __AP10-64__
County

Action __Petition for Review__
80C

# J. Murray

__Ryan Herrington, M.D.__ VS. __Maine Board of Licensure in Medicine__

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Christopher Taintor, Esq.<br>415 Congress Street<br>P.O. Box 4600<br>Portland Maine 04112-4600 | Dennis Smith, AAG<br>6 State House Station<br>Augusta Maine 04333-0006 |

| Date of Entry | |
|---|---|
| 12/16/10 | Rule 80C Petition for Review with Independent Claim for Equitable and/or Declaratory Relief, filed. s/Taintor, Esq. |
| 12/29/10 | Appearance and Statement of Position, filed. s/Smith, AAG |
| 1/10/11 | Certification of Record, filed. s/Maureen Lathrop, Sec.<br>**NOTICE AND BRIEFING SCHEDULE ISSUED**<br>Copies mailed to attys. of record. |
| 2/22/11 | Brief of Petitioner, filed. s/Tanitor, Esq. |
| 3/23/11 | Brief of Respondent, filed. s/Smith, AAG |
| 4/8/11 | Reply Brief of Petitioner, filed. s/Taintor, Esq. |
| | Notice of setting for 7/7/11 sent to attorneys of record. |
| 7/13/11 | Hearing held on 7/7/11 with the Hon. Justice Robert Murray, presiding. Tape 1432 Index 6108-7173. Tape 1433 Index 102-430.<br>Oral arguments made to the court. Court to take matter under advisement. Christopher Taintor, Esq. for the Pettitioner and Dennis Smith, AAG for the Respondent. |
| 11/9/11 | ORDER ON RULE 80C APPEAL, Murray, J. (10/28/11)<br>The Court REMANDS the case to the Board<br>Copies to attys. of record. |